IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MATTHEW D. MCKENNA,

        Plaintiff,

v.

ANTHONY J. MIGNELLA, et al.

        Defendants.

CIVIL ACTION
NO. 16-1017

### MEMORANDUM

**SCHMEHL, J.**  /s/ JLS                                                                                July 7, 2016

       On March 3, 2016, Plaintiff Matthew D. McKenna filed a complaint against more than 170 defendants, alleging a wide-ranging conspiracy, various constitutional and other violations, corruption, and one or more "secret trials," largely revolving around a thirty-year-old conviction on drug charges. At the time he filed the complaint, he paid the filing fee. Two of the many defendants sent letters to the Court indicating that they could not respond properly because they had received summonses but not copies of the complaint itself. On May 9, 2016 (docketed May 10), the Court issued a notice that the case would be dismissed as against any defendants not served by June 1, 2016, with proof of service to be filed within five days of service.

       On May 19, 2016, Plaintiff filed a motion to extend the time for service and, despite having initially paid the filing fee, an application to proceed *in forma pauperis*. Shortly thereafter, he also filed an affidavit of service on some defendants; however, it appeared from this filing that Plaintiff attempted service by certified mail without any signature requirement. The Court issued an order denying the motion to proceed *in forma pauperis* without prejudice, noting that Plaintiff's application contained insufficient and

unclear information about his finances. The order gave Plaintiff the opportunity to file an amended application with clearer financial information and noted that if the application were then granted, the Court would review and potentially dismiss the complaint under 28 U.S.C. § 1915(e)(2)(B). Finally, the order held off the deadline for service until resolution of the *in forma pauperis* issue and reminded Plaintiff that service by mail is only effective with the signature of the defendant or an authorized agent, and then only for out-of-state defendants, and that any service requires that defendants receive copies of the complaint.

Plaintiff then filed a narrative statement with some further explanation of his financial situation; it also discussed service of the complaint. Attachments to that statement continued to indicate that Plaintiff has sent mailings to numerous defendants without requiring signatures from the recipients (there is also no certainty as to what was included in those mailings, and there may be other service deficiencies). Plaintiff followed that statement with a request for entry of default regarding twenty-six defendants upon whom he claims proper service by certified mail (the letter also asks for the Court to order various records and files). Finally, Plaintiff filed a motion for default judgment against "defendants"; whether he refers to all defendants or only those specified in his previous request for entry of default is unclear.

In sum, this case now involves a long, difficult-to-follow, hard-to-credit complaint against an extremely large number of defendants; an *in forma pauperis* application despite payment of the original filing fee; and late, apparently ineffective service nevertheless coupled with a request and motion for default against some or all defendants.

Based on the additional information in Plaintiff's June 27, 2016, statement, the Court must conclude that even though Plaintiff paid the initial filing fee, he has little or no financial means and is entitled to proceed *in forma pauperis* from this point forward. His application to do so will be granted. This decision has repercussions for the other open issues in this case.

The lack of proper service and the *in forma pauperis* application obviously interact in a significant way. When the Court grants leave to proceed *in forma pauperis*, it must also order that the summonses and complaints be served by the United States Marshals Service under 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3). Plaintiff's failure to properly serve would then be rectified, but of course entry of default or default judgment against defendants at this time, before they have been properly served by the Marhsals, is inappropriate. No defendant will have a duty to respond to the complaint until properly served by the Marhsals, and under time limits based on that service (including any waivers of service if the Marshals employ that method). Therefore, Plaintiff's requests for default will be denied.

However, as noted in the Court's prior order, a grant of leave to proceed *in forma pauperis* also entails a review of the complaint under 28 U.S.C. § 1915(e)(2)(B). If the Court finds that the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant protected by immunity, it must dismiss the complaint. Considering the great time and expense the Marshals Service would have to go through to serve all defendants in this case, the Court believes that screening the complaint is appropriate. The cost of the actual filing fee ($400) pales in comparison to the cost of having the Marshals serve the complaint on

behalf of Plaintiff. The complaint itself is more than sixty pages long, and there are 174 accompanying exhibits, many of them multiple pages.[1] Service upon more than 170 defendants will be expensive and burdensome. In addition, although the complaint was filed and the fee paid, this case would be very unlikely to proceed any further if *in forma pauperis* status were denied. Plaintiff has failed to conduct proper service on his own and has not apparently reacted to the Court's prior warning that his method of service (mail with no signature upon receipt) is unacceptable. There is every reason to screen the merits of the complaint in this case as in any normal *in forma pauperis* case.

Further, in addition to the 28 U.S.C. 1915(e)(2)(B) review, "[a] federal court may *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) when the allegations within the complaint 'are so attenuated and unsubstantial as to be absolutely devoid of merit, . . . wholly insubstantial, . . . obviously frivolous, . . . plainly unsubstantial, . . . or no longer open to discussion.'" *DeGrazia v. F.B.I.*, 316 F. App'x 172, 173 (3d Cir. 2009) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). The *DeGrazia* court further described the plaintiff's claims as warranting dismissal because "they rel[ied] on fantastic scenarios lacking any arguable factual basis." *Id.* Under Federal Rule of Civil Procedure 8, the complaint is also required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and the allegations must be "simple, concise, and direct." *See also Scibelli v. Lebanon Cnty.*, 219 F. App'x 221, 222 (3d Cir. 2007).

Review of this complaint under either § 1915(e)(2)(B) or general substantiality reasoning leads to serious doubt that this case should proceed. The complaint is a long,

---

[1] The exhibits were submitted in two large binders and have not even been entered on the electronic docket. They also include a DVD.

rambling narrative filled with outrageous and highly improbable stories of a corrupt conspiracy involving huge numbers of people and extremely unlikely scenarios, such as the use of inmates as paid stand-ins for Plaintiff and his associates at court hearings so that those hearings could be kept secret, not from the public, but rather from Plaintiff and his associates. Plaintiff has also failed to articulate what exactly his claims are, though he lists off several constitutional provisions. In part, he seems to be seeking documents rather than pursuing claims appropriate to litigation. His demands for monetary compensation demonstrate that he must feel he has some litigable claims, but the amounts he demands further indicate the absurdity of the complaint: he moves from the relatively modest request for payment for his own time doing legal work, to several tens of millions of dollars from each of various individual defendants, to the rather specific figure of $23.7 billion from the remaining defendants that were employed by the state of New Jersey. It is also worth noting that many of the defendants are likely to be protected by prosecutorial, judicial, and other immunities, although at this point it is difficult to determine which defendants would be immune from what claims.

     Much of the hyperbole and lack of clarity can of course be attributed to Plaintiff's *pro se* standing and at least partially forgiven. But perhaps the most straightforward problem with the complaint cannot be easily overlooked. A thorough reading of the complaint reveals that nothing in Plaintiff's story—none of the alleged wrongful conduct and not even any of Plaintiff's long investigation into the matter—occurred later than May of 2008. Even assuming that the limited pieces of the story Plaintiff says occurred most recently (mailing some evidence to the U.S. Attorney in 2007, communicating with a county prosecutor in 2008) had any bearing on the accrual of Plaintiff's claims, an

assumption that is almost certainly unwarranted, it is hard to conceive of any claim Plaintiff could bring that would not be time-barred in 2016. *See Barren v. Pennsylvania State Police*, 607 F. App'x 132, 134 (3d Cir. 2015) ("Although the running of a statute of limitations is an affirmative defense, *see* Fed.R.Civ.P. 8(c), a court may dismiss a claim sua sponte under 28 U.S.C. § 1915(e)(2)(B)(ii) if it is obvious from the face of the complaint that the claim is barred by the applicable statute of limitations and no development of the record is necessary."). Because of timing alone, dismissal of the complaint is warranted.

However, it is apparent from some of the attachments to the complaint and other publicly available news sources that key players in Plaintiff's allegations, particularly prosecutor Nicholas Bissel and some of his associates, were indeed later proven to be involved in rather extensive corruption. The Court is, therefore, sensitive to the possibility that Plaintiff's claims, while extreme, may not be wholly fantastical. In short, his claims are improbable but not impossible. For that reason, and because of Plaintiff's *pro se* status, Plaintiff is due an opportunity to amend his complaint to present clear, focused, timely claims.

For all these reasons, the complaint will be dismissed without prejudice. Plaintiff may file an amended complaint within sixty days. Plaintiff will be granted leave to proceed *in forma pauperis*, so he does not have to make any attempt to serve the current or amended complaint himself. If and when he files an amended complaint, the Court will then review it, and if it clearly states timely claims upon which relief could be granted against particular defendants, the Court will order the Marshals to serve it on those defendants only. At that time, any defendants served will have an obligation to respond.

Plaintiff's current applications for entry of default and default judgment are hereby denied.